23-1397
AW

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

## INFORMAL BRIEF RE: Dismissal of *Webb v. Alfred Street Baptist Church*, Civil Action No. 1:23cv96 (LMB/JFA)

1. **Jurisdiction Name of the court or agency from which you are appealing:**
   Eastern District of Virginia, Alexandria Division, Referring Judge, Leonie M. Brinkema,

Federal District Judge Presiding Judge, John F. Anderson, Federal District Judge.

2. **Dates of the order or orders for which review is sought:**
   March 21, 2023 Order to Deny Leave to Exceed Time in Filing Notice of Appeal from

February 8, 2023 Order, dismissing case without prejudice, after refusal to grant leave to proceed

without payment of fees.

3. **Issues for Review**
   i.      **Nature of the Case**

Petitioner-Appellant Major Mike Webb, *Pro Se*, hereby timely appeals to the United States

Court of Appeals for the Fourth Circuit, regarding the March 21, 2023 Order, denying leave to

exceed time to file a notice of appeal, consequent to the February 8, 2023 Order of the Federal

District Court for the Eastern District of Virginia, Alexandria Division, denying application to

proceed *in forma pauperis* (IFP), *sua sponte*, without prejudice, in what is far from a matter of

first impression with regard to this Appellant, but raising a vague standard, applied arbitrarily

and capriciously, demonstrative of a clear abuse of discretion.

Of recent record, Petitioner, a *pro se* litigant, has found Applications to Proceed *in Forma

Pauperis* within the Fourth Circuit in the matters, *Webb v. Kimmel* ,Civil Action No. 3:22cv92

(E.D.Va. 2023), *on appeal* Record No. 23-1152 (4th Cir. 2023), a case brought under the federal

racketeering statute, "'the litigation equivalent of a thermonuclear device'," *Katzman v.

Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed.

Bank*, 948 F.2d 41 (1st Cir. 1991)), aff'd, 113 F.3d 1229 (2d Cir. 1997), but, "although civil

- 1 -

*RICO* may be a 'potent weapon,' plaintiffs wielding *RICO* almost always miss the mark."
*Brookhaven Town Conservative Comm. v. Walsh*, No. 14CV6097JFBARL, 2016 WL 1171583,
at \*1–8 (E.D.N.Y. Mar. 23, 2016) (citing *Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y.
2009)[1]. "Accordingly, courts have expressed skepticism toward civil *RICO* claims." *Id.* citing
*DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225 (E.D.N.Y. 2010)[2]. Appellant is
also currently on petition for certiorari at the U.S. Supreme Court in a matter commenced under
the *Freedom of Information Act (FOIA)*, 5 U.S.C. §552/*Privacy Act (PA)*, 5 U.S.C. §552a, a
matter for which he had also been approved an Application to Proceed *in Forma Pauperis*. *Webb
v. Dep't of the Army*, Civil Action No. 1:22-CV-02236-UNA, *aff'd* Record No. 22-5292 (D.C.
Cir. 2023), presenting, in the current case, a litigant treated in disparate treatment *vis á vis*
himself, and raising a reasonable inference of an arbitrary and capricious decision, if not also
abuse of discretion. *Azalea Corp. v. City of Richmond*, 201 Va. 636 (1960)[3].

Of notorious record, Petitioner has been recognized as far away as Seattle as having been
"against current government efforts and recommendations for safety during the COVID-19
pandemic." Staff, "Mary Kadera: Democrat," *Progressive Voters Guide*, September 15, 2021,
https://progressivevotersguide.com/index.php/virginia/2021/general/mary-kadera (accessed June
25, 2022), having docketed a half dozen cases for certiorari in less than a year on the topic,
including *Webb v. Northam*, Record No. 21-6170 (U.S. 2021) (challenging effectiveness of

---

[1] "[C]onducting survey of 145 civil *RICO* cases filed in the Southern District of New York from 2004 through 2007,
and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the
motion to dismiss stage". *Brookhaven Town Conservative Comm.*, No. 14CV6097JFBARL, 2016
WL 1171583, at \*1–8, *supra* (citing *Gross*, 628 F. Supp. 2d, at 475).
[2] "[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-
the-mill fraud claims as *RICO* violations." *Id.*
[3] Describing an "arbitrary" and "unreasonable" "refusal to grant a variance in the zoning regulations" as
constituting "an abuse of discretion." *Id.*

nonmedical grade facial coverings) and *Webb v. Fauci*, Record No. 21-6868 (U.S. 2022) (*FOIA*), 5 U.S.C. §552, action challenging the COVID-19 countermeasures developed without prerequisite knowledge of infectious dose and correlates of protection).

On January 20, 2023, the action was commenced, against, under the *Freedom of Access to Clinic Entrances (FACE) Act*, 18 U.S.C. § 248(a)(2), *inter alia*, several pro-abortion and social justice historical Black Protestant denomination churches from Harlem to Atlanta, regarding their mandates for COVID-19 countermeasures products, as described in the *Emergency Use Authorization (EUA) Declaration*, to address "a significant potential to affect national security or the health and security of United States citizens living abroad and that involves the novel (new) coronavirus", 85 Fed. Reg. 63, 18250 1 , April 1 , 2020[4], defining "national security" in restrictive

---

[4] "Before an *EUA* may be issued, the Secretary of HHS must declare that circumstances exist justifying the authorization based on one of four determinations: (I) A determination by the Secretary of Homeland Security that there is a domestic emergency, or a significant potential for a domestic emergency, involving a heightened risk of attack with a, chemical, biological, radiological, or nuclear ('CBRN') agent or agents; (2) the identification of a material threat by the Secretary of Homeland Security pursuant to section 3 I 9F-2 of the Public Health Service (Pl-IS) Act sufficient to affect national security or the health and security of United States citizens living abroad; (3) a determination by the Secretary of Defense that there is a military emergency, or a significant potential for a military emergency, involving a heightened risk lo United States military forces, including personnel operating under the authority of title IO or title 50, of attack with (i) a biological, chemical, radiological, or nuclear agent or agents; or (ii) an agent or agents that may cause, or are otherwise associated with, an imminently life-threatening and specific risk to United States military forces; or (4) a determination by the Secretary that there is a public health emergency, or a significant potential for a public health emergency, that affects, or has a significant potential to affect, national security or the health and security of United States citizens living abroad, and that involves a CBRN agent or agents, or a disease or condition that may be attributable to such agent or agents.

Based on any of these four determinations, the Secretary of 1-11-IS may then declare that circumstances exist that justify the *EUA*, at which point the FDA Commissioner may issue an *EUA* if the criteria for issuance of an authorization under section 564 of the FD&C Act are met. The Office of the Assistant Secretary for Preparedness and Response, 1-11-IS, requested that the FDA, 1-1 1-1 , issue an EUA for drugs and biological products to allow the Department to take response measures based on in formation currently available about the virus that causes COVID- 19. The determination of a public health emergency, and the declaration that circumstances exist justifying emergency use of drugs and biological products by the Secretary of HHS, as described below, enab le the FDA Commissioner to issue an EUA for drugs and biological products for emergency use under section 564 of the FD&C Act." *Id.*

terms[5] [6], describing few if any members of Respondent churches, potentially constituting an

unauthorized commitment under the Federal Acquisitions Regulation (FAR), FAR § 1.602-3,

and, by order, date January 25, 2023, the Trial Court had denied the *pro se* Appellant's

application to proceed *in forma pauperis*, ECF No. 8, and had ordered that the action dismissed,

Appellant having failed to pay the required fees no later than February 7, 2023. ECF No. 10.

## ii.    Applications to Proceed without Payment of Fees

Ironically in an action brought against several churches, which profess an alleged sincerely held
faith belief in words that dictate that they "[g]ive to him that asketh thee, and from him that
would borrow of thee turn not thou away,to care for the poor," *Matthew* 5:42 (KJV), the Court
erects a prudential rule of standing to protect the defendants, building a wall of protection, not
separation, in establishment arguably of a religion on the issue in controversy.

In accordance with 28 U.S.C. § 1915(a), "any court of the United States may authorize the
commencement. . . of any suit, action or proceeding, civil or criminal, or appeal therein, without
prepayment of fees or security therefor, by a person who submits an affidavit that includes a
statement of all assets such prisoner possesses that the person is unable to pay such fees or give
security therefor", and "[s]uch affidavit shall state the nature of the action, defense or appeal and
affiant's belief that the person is entitled to redress", and "[h]ad the legislature intended. . . [any
other purpose or meaning]. . . , it would have said so." *Alger v. Com.*, 40 Va. App. 89 (2003),
*aff'd*, 267 Va. 255 (2004). *See also Hughes v. Commonwealth*, 39 Va.App. 448 (2002); *Barnes v.
Commonwealth*, 33 Va.App. 619 (2000); *Reynolds v. Commonwealth*, 30 Va.App. 153 (1999).

"Thus, a statute should be read to give reasonable effect to the words used and to promote the
ability of the enactment to remedy the mischief at which it is directed." *Mayhew v.
Commonwealth*, 20 Va.App. 484 (1995). Moreover, "'[w]here a particular construction of a
statute will result in an absurdity, some other reasonable construction which will not produce the
absurdity will be found.'" *Mayhew*, 20 Va.App. at 484 (quoting *Miller v. Commonwealth*, 180
Va. 36 (1942)).

Under 28 U.S.C. § 1915(a) a court cannot go beyond consideration beyond a litigants ability to
pay to determine whether "the person is entitled to redress" and should not "erect[] a novel
prudential standing principle in order to avoid reaching the merits of the constitutional claim".

---

[5] "Regular retired members and members of the retired Reserve must be managed to ensure they are accessible for
national security and readiness requirements ." DoD Directive 1352.01, *Management and Mobilization of Regular
and Reserve Retired Military Members*, Section 1.2(c), December 8, 2016.
[6] Under 8 U.S.C. § 1189(d)(2), "the term 'national security' means the national defense, foreign relations, or
economic interests of the United States".

- 4 -

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

The ABA has intimated that "[f]ees imposed by a court must be related to the justice system, services rendered to the defendant, and never be in excess of a person's ability to pay", Staff, "Ten Guidelines on Court Fines and Fees," *FFJC*, August 6, 2018, and "[t]he Supreme Court has held that 'punishing a person for his poverty' is unconstitutional", but "[f]ees and fines are most often evaluated by courts and criminal justice agencies, legislators, and policymakers on the basis of the revenue they generate, but they come at a great cost to the criminal justice system." Matthew Menendez, et al., "The Steep Costs of Criminal Justice Fees and Fines," *Brennan Center for Justice*, November 21, 2019.

One Article III Court has observed that "[w]hether to permit or deny an application to proceed IFP is within the sound discretion of the court", *Webb v. Department of Treasury*, Civ. Action No. 22-cv-2034 (UNA) (D.D.C. July 27, 2022) (citing *Prows v. Kastner*, 842 F.2d 138 (5 th Cir. 1988), *cert. denied* 488 U.S. 941 (1988); *Weller v. Dickson*, 314 F.2d 598 9th Cir. 1963), *cert. denied* 375 U.S. 845 (1963), but such grant is not plenary license.

Nonetheless, "courts will generally look to whether the person is employed, the person's annual salary, and any other property or assets the person may possess", *Lin v. District of Columbia*, No. 16-cv-645, 2020 WL 7695973 at *1 (D.D.C. December 28, 2000) (citation omitted), as are all detailed on the submitted affidavit application, and, of record, Petitioner has been unemployed since 2016, and, now, under suspect circumstances, is homeless, again, as he had become after his first run for U.S. Congress.

An individual need not "be absolutely destitute to enjoy the benefit of the [IFP] statute." *McKelton v. Bruno*, 428 F.2d 718, 719 (D.C. Cir.) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) But the movant should demonstrate that because of poverty he or she cannot "pay or give security for the costs. . . and still be able to provide [for] the necessities of life." *Id.* at 719-20 (internal quotations marks omitted). *Id.*

4.  **Issue 1. Trial Court did, in error, and clear abuse of discretion, fail to employ the least restrictive means when infringing Appellant's right to utilize the courts, particularly when seeking redress for aggrievement of his religious liberties, and when exercising a statutory right to request grant of leave to proceed *in forma pauperis*, under 28 U.S.C. § 1915(a).**
    i.  **Supporting Facts.**

The subject action was commenced on January 20, 2023, with the filing of a Verified Complaint, ECF No. 1, alleging, *inter alia*, allegations under the *Freedom of Access to Clinic Entrances (FACE) Act*, 18 U.S.C. § 248(a)(2), against historically Black Protestant denomination churches, with which he has historic association, and intimate connection, along the Eastern Seaboard, from Harlem to Atlanta. At the commencement of the action, an Application to Proceed *in Forma Pauperis*, as authorized under 28 U.S.C. § 1915(a), was filed, in addition to a Motion for Summary Judgment, ECF No. 4, and Motion for Temporary Restraining Order. ECF. No. 6.

By Order, dated January 25, 2023, the Application to Proceed *in Forma Pauperis* was denied, under penalty of dismissal if payment had not been received by February 7, 2023, ECF No. 8.

Petitioner, in circumstances explained, in detail, to the Trial Court, in a Motion for Leave to Exceed Time for Filing a Notice of Appeal, filed on March 20, 2023, having not paid the demanded sum, amounting to $402.00, the action was dismissed, without prejudice, on February 8, 2023.

### ii.      Argument.

### (1) Least Restrictive Means

Clearly, with an action brought under the *FACE Act*, 18 U.S.C. § 248(a)(2), there was

sufficient notice pleading, as described in Fed.R.Civ.Pro. 8, to inform even Respondents of

pendency of an action involving allegations of religious liberties that had been infringed, and it is

clear that "Government may substantially burden a person's exercise of religion only if it

demonstrates that application of the burden to the person. . . (1) is in furtherance of a compelling

governmental interest; and (2) is *the least restrictive means of furthering that compelling

governmental interest*." *U.S. v. Meyers*, 95 F.3d 1475 (10th Cir. 1996).

As noted in the Motion, in accordance with  Fed.R.App.Pro. 4(a)(5)(A), a litigant enjoys a

right to request leave of court for extension of time for filing a notice of appeal. Pursuant to the

controlling rule, "[t]he district court may extend the time to file a notice of appeal if: (i) a party

so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii)

regardless of whether its motion is filed before or during the 30 days after the time prescribed by

this Rule 4(a) expires, that party shows excusable neglect or good cause." *Id.*

Pursuant to Fed.R.App.Pro. 4(a)(5)(B), "[i]f the motion is filed after the expiration of the

prescribed time, notice must be given to the other parties in accordance with local rules", as had

been attested in certification of service attached thereto.

As noted in the Motion, the order of dismissal, without prejudice, having been entered on February 8, 2023, the motion for leave of court would have been timely, under Fed.R.App.Pro. 4(a)(5)(A)(i), and the Movant need only thereafter present a showing of good cause or excusable neglect therefor. However, considering the particular facts in the unique procedural history, given a dismissal without prejudice, granting the Appellant an opportunity the right to simply commence the action again, the only purpose served by denying the grant of leave to file the notice of appeal on the denial of the Application to Proceed *in Forma Pauperis* would be to deny to Appellant that which has long been recognized as a right to interlocutory appeal, especially for indigent litigants. *Roberts v. District Court*, 339 U.S. 844 (1950), hardly the least restrictive means in a case brought in redress of religious liberties that had been derogated, in violation of the

### (2) Undue Burden

"Dealing with these voter ID laws, this is not about voter verification, this is about voter suppression", Rev. Warnock reportedly had preached "in a sermon at Ebenezer Baptist Church in 2015", Evie Fordham, "Sen. Raphael Warnock falsely claims he never opposed voter ID laws," *Fox News*, June 17, 2021, but, today, like the other Black Protestant denomination Respondents, relies upon presentation of a government identification card, along with proof of vaccination status, as requirements for devotional religious worship during the in-person attendance services, the subject of the underlying suit.

Similarly, in reaction to the recent Supreme Court decision on abortion, Rev. Howard-John Wesely, pastor of Respondent Alfred Street Baptist Church, claiming not to be a politician or an attorney, had preached a sermon in support of abortion, rejecting a claim from one of his colleagues' that all Christians should be Shiprahs and Puahs from the Book of Exodus, and

- 7 -

rejecting the proposition that "If you are a Christian you must celebrate this decision", claiming that "abortion, as we know it, is to be found nowhere in the Bible." Kdubtru, "Abortion! 'I'm With Her', Rev Howard John Wesley," *YouTube*, July 15, 2022,

https://www.youtube.com/watch?v=1kwl4OUfazA (accessed April 11, 2023).

Similarly, explaining his position, the pastor for Respondent Ebenezer Baptist Church, had found reported: "Rev. Warnock believes a patient's room is too small a place for a woman, her doctor, and the US government and that these are deeply personal health care decisions — not political ones," Warnock's spokesman Michael Brewer told the paper." Jon Levine, "Rev. Warnock slammed by black Georgia ministers over abortion stance," *New York Post*, December 12, 2020. "'You can not remember Martin Luther King Jr. and dismember him at the same time,' Warnock said, adding that voter ID laws 'constitute, in my estimation, a poll tax.'" *Id.* And both, presumptively, would agree that "[a]s with any medical procedure, the State may enact regulations to further the health or safety of a woman seeking an abortion, but may not impose unnecessary health regulations that present a substantial obstacle to a woman seeking an abortion." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992).

Yet, with presently Respondents failing even to respond to pleadings filed at the commencement of the action or enter an appearance since January 20, 2023, they have made no arguments, but, logically should be assumed to agree that it would present at least an equally undue burden to compel Appellant to begin again a suit, dismissed without prejudiced, while denying his right to an appeal of the present action, a right recognized by the nation's highest court, for applicants desiring to proceed without payment of fees. *Roberts*, 339 U.S., at 844.

Presumptively, had they elected to make an appearance, and not having left to the Trial Court to dispense with the action, as a guardian *ad litem*, Respondents would agree that to reverse the

- 8 -

decision to dismiss the case, rather than permit Appellant to appeal the subject of his application to proceed *in forma pauperis* would be not only right, proper and just, but also would be a decision that would "glorif[y] God." Adelle M. Banks, "'COVID has been harder on us': Some Black churches remain hesitant to reopen," *Religion News*, October 4, 2021[7].

### (3) Wall of Separation

The elected representative in Washington for Virginia's 8th Congressional District resides just down the street from the business address of Respondent Alfred Street Baptist Church, whom they overwhelmingly support, and he is the newest member of the "atheist club in congress", Hehment Mehta, "Rep. Don Beyer (D-Virginia) Joins the Congressional Free Thought Caucus," *The Friendly Atheist*, November 20, 2020. Congressman Don Beyer, Jr., has stated, "I have four children, none of whom have even the slightest inclination toward God, religion, or church," Don Beyer, "Always Searching, Always Bent on Discovering," *Secular Coalition of America*, February 24, 2022, the empirically winning message for over 75% of voters in Northern Virginia. Rebecca Downs, "Rep. Don Beyer Easily Defeats Squad-Backed Challenger in Virginia's 8th District," *Town Square*, June 21, 2022; Scott McCaffery, "Rep. Don Beyer Easily Defeats Squad-Backed Challenger in Virginia's 8th District," *Arlington Sun Gazette/Inside NOVA*, November 8, 2022.

Although claiming not to be a "politician", when President Barack Obama had visited his church during an Easter service, he made his selfie with the former President his profile picture on social media, "[t]he choir— including women in purple dresses and men sporting purple

---

[7] "'Every church has to make a decision on where they believe the line of safety is,' said the Rev. Howard-John Wesley of Alexandria, Virginia. 'And in our mind, one member contracting COVID on the grounds of Alfred Street would be more than we believe glorifies God.'" *Id.*

ties— sang a stirring rendition of the hymn 'He Lives,' prompting most of the church, filled to capacity, to clap, sing and sway to the thumping organ keys while ushers collected the offering", and "[t]he lively pastor based his sermon around a scripture from 1 Corinthians 15 on the life and resurrection of Christ." Newsroom, "Obama Family Attends Easter Service at Historic Baptist Church in Virginia," *NBC News*, April 5, 2015.

While the Pastor at Alfred Street Baptist Church, who has acknowledged publicly, "'I need to take care of me'", Nate Flannagan, "Megachurch pastor walks away from pulpit because he feels far from God, tired in soul," *Christian Today*, December 13, 2019, has stated for the record that "'one member contracting COVID *on the grounds of Alfred Street* would be more than we believe glorifies God'," Adelle M. Banks, "'COVID has been harder on us': Some Black churches remain hesitant to reopen," *supra*, the incumbent in Virginia's 8th Congressional District, too, had "shown signs of frustration whenever government officials used God to promote bad policy or bad ideas—or twisted the Bible to make a bad point," and, at the urging of Congressmen Jared Huffman and Jamie Raskin announced his decision to join the Congressional Free Thought Caucus, described as not an "atheist club," but rather "just a group of lawmakers dedicated to promoting reason-based policy, keeping church and state separate, opposing discrimination against non-religious people, and championing freedom of thought around the world," while expressing the aspiration that "[t]he hope is that the membership continues growing—making the Caucus more influential—while the stigma of being an atheist (or being associated with non-religiosity) decreases around the country." Hehment Mehta, "Rep. Don Beyer (D-Virginia) Joins the Congressional Free Thought Caucus," *supra*.

Congressman Beyer has found much support amongst those who are "not afraid to burn in Hell", FFRF, "U.S. Representative Don Beyer," *YouTube*, January 6, 2022,

- 10 -

https://youtu.be/D7jil4vZA8k (accessed April 12, 2023), and who have expressed the view that "[t]he history of Western civilization shows us that most social and moral progress has been brought about by persons free from religion", and who have made it their mission to "work[] as an umbrella for those who are free from religion and are committed to the cherished principle of separation of state and church." Staff, "About the Freedom from Religion Foundation," *Freedom from Religion Foundation*, https://ffrf.org/about (accessed April 12, 2023).

Promoting a moral secularism, Congressman Beyer and his supporters at churches like Alfred Street Baptist Church, decried a decision by the Supreme Court that they had characterized as having attempted to "[b]ring [d]own the [w]all of [s]eparation", Press Release, "The Supreme Court Case That Could Bring Down the Wall of Separation Between Church and State," *Secular*, November 13, 2018 (quoting Andrew L. Seidel, "The Supreme Court Case That Could Bring Down the Wall of Separation Between Church and State (Updated)," *Rewire News Group*, November 12, 2018.

Yet, in the present instance, where Appellant, granted priority of action for his motion for temporary injunctive relief, under statute, 28 U.S.C. § 1657, has found the Trial Court not resorting to the least restrictive means, imposing an undue burden, of record, not having even entered an appearance, after having been provided notice of the action, with the immediate filing of motion for temporary injunctive relief, certified in service to Respondent-Appellants, the Black Protestant Denomination Respondents did elect a right to remain silent, and permit the Trial Court to act as the gatekeeper to their policies inspired by a notion to "glorify God", in their collective "minds", Adelle M. Banks, "'COVID has been harder on us': Some Black churches remain hesitant to reopen," *supra*, while ignoring the empirical evidence presented in complaint

- 11 -

regarding a patent defect, *Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949 (1979)[8], not

having been developed with knowledge of infectious dose, Staff, "Scientific Brief: SARS-CoV-2

Transmission," *CDC*, May 7, 2021, a metric required to determine the proper correlates of

protection to develop an effective vaccine, without the requirement for large stage three clinical

trials, Shuo Feng, *et al.*, *Correlates of protection against symptomatic and asymptomatic SARS-*

*CoV-2 infection*, 27 Nat. Med. 11, pp. 2032-2040 (November 2021), doi: 10.1038/s41591-021-

01540-1, *Epub.* September 29, 2021; Florian Krammer, *Correlates of protection from SARS-*

*CoV-2 infection*, 397 Lancet 10283, pp. 1421-1423, April 17, 2021, doi: 10.1016/S0140-

6736(21)00782-0, *Epub.* April 9, 2021; Stanley A. Plotkin, *Correlates of Protection Induced by*

*Vaccination*, 17 Clin. & Vacc. Immun. 7, pp. 1055-1065 (July 2010), doi:10.1128/CVI.00131-

10[5]; Joe La Palca, "New Evidence Points To Antibodies As A Reliable Indicator Of Vaccine

Protection," NPR, August 23, 2021 (citing Peter Gilbert, *et al.*, *Immune correlates analysis of the*

*mRNA-1273 COVID-19 vaccine efficacy clinical trial*, 375 Science 6576, pp. 43-50, November

23, 2021, doi: 10.1126/science.abm3425). Yet, it has been a long-held precedent that facial

plausibility a complaint would survive a demurrer where allegations were at least facially

plausible, or "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged", *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007).

---

[8] Under a theory of products liability a plaintiff may "establish prima facie that the device was defective when it left the manufacturer's hands." *Id.*

Arguably, far more than direct injury to Appellant, Respondents, having received notice, are presenting a far greater danger to their congregants, under profession of glorifying God, while ignoring allegations that, amounting to what is at least a latent defect, or "an imperfection in the materials used which could not be discovered by any known and customary test", Couch on Ins. § 153:77 (3d ed.2010), existed when it had been published in a peer-reviewed journal that (defining "latent defect" as existed with regard to the Moderna and Pfizer products, when he simply reiterated that:

Combined, the mRNA vaccines were associated with an excess risk of serious adverse events of special interest of 12.5 per 10,000 vaccinated (95 % CI 2.1 to 22.9); risk ratio 1.43 (95 % CI 1.07 to 1.92). The Pfizer trial exhibited a 36 % higher risk of serious adverse events in the vaccine group; risk difference 18.0 per 10,000 vaccinated (95 % CI 1.2 to 34.9); risk ratio 1.36 (95 % CI 1.02 to 1.83). The Moderna trial exhibited a 6 % higher risk of serious adverse events in the vaccine group: risk difference 7.1 per 10,000 (95 % CI –23.2 to 37.4); risk ratio 1.06 (95 % CI 0.84 to 1.33). Combined, there was a 16 % higher risk of serious adverse events in mRNA vaccine recipients: risk difference 13.2 (95 % CI 3.2 to 29.6); risk ratio 1.16 (95 % CI 0.97 to 1.39). Joseph Fraiman, et al., Serious adverse events of special interest following mRNA COVID-19 vaccination in randomized trials in adults, 40 Vaccine 40, September 22, 2022, Epub., August 31, 2022.

"In determining whether there is a violation of the *Free Exercise Clause*, courts must assess: '(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate. . . objective." *Cardew v. New York State Dep't of Corr. Servs.*, No. 01 CIV. 3669 (BSJ), 2004 WL 943575, at *1–9 (S.D.N.Y. Apr. 30, 2004): (quoting *Farid v. Smith*, 850 F.2d 917 (2d Cir.1988)). And, upon review of these facts, of record, in discerning any potential prejudice to Respondent-Appellees by permitting Appellant an opportunity to be availed his appeal of right, a reviewing court would find that the Trial Court "would achieve a particularly

- 13 -

perverse result", *Pelphrey v. Cobb Cty., Ga.*, 547 F.3d 1263 (11th Cir. 2008), by delaying even a hearing on Appellant's motion for temporary injunctive relief.

It has been said that a "fundamental requisite" of providing due process is simply "the opportunity to be heard", *Grannis v. Ordean*, 234 U.S. 385 (1914), and "at a meaningful time and in a meaningful manner", *Armstrong v. Manzo*, 380 U.S. 545 (1965). However, "'[i]t is emphatically the province and duty of the judicial department to say what the law is'", *U.S. v. Nixon*, 418 U.S. 683 (1974) (quoting *Marbury v. Madison*, 1 Cranch 137 (1803)).

### (4) Privileges and Immunities of Citizens

As poignantly observed in *West Virginia State Bd. of Educ. v. Barnett*, 319 U.S. 624 (1943), "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." "Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds", "*Stanley v. Georgia*, 394 U.S. 557 (1969), and, "'if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.'" *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (quoting *Mugler v. Kansas*, 123 U.S. 623 (1887); *Minnesota v. Barber*, 136 U.S. 313 (1890); *Atkin v. Kansas*, 191 U. S. 207 (1907)).

As observed in *Doe v. Tangipahoa Par. Sch. Bd.*, 631 F. Supp. 2d 823 (E.D. La. 2009) "[t]he loss of *First Amendment* freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury", *id.* (quoting *Elrod v. Burns*, 427 U.S. 347 (1976)). And, "it can hardly be

- **14** -

doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office", *Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971). Appellant, of record, has been, before, and throughout the public health crisis a political candidate, engaged in campaign activity, *see generally* Staff, "Mary Kadera: Democrat," *supra*, wherein "a candidate's expenditure of his personal funds directly facilitates his own political speech", *Buckley v. Valeo*, 424 U.S. 1. N. 58 (1976).

   Still, "[t]he mere fact that. . . [one] may not approve of publications. . . , or may not desire. . . to discuss. . . [another's] activities or publish. . . [another's] spoken words, does not give rise to an action cognizable under the law", and "[t]he *First Amendment* freedoms of speech and press are too precious to be eroded or undermined by the likes and dislikes of persons who invite attention and publicity by their own voluntary actions", *Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204 (W.D. Va. 1981), especially in matters where "[t]he Court is mindful that a *pro se* plaintiff's complaint, 'however inartfully pleaded,' is subjected to 'less stringent standards than formal pleadings drafted by lawyers.'" *Brice v. Jenkins*, 489 F. Supp. 2d 538 (E.D. Va. 2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)).

   While certainly Respondent Historically Black Protestant churches would agree that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude", *15th Amendment*, § 1, at least in ordinal precedence, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside", and "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. *14th Amendment*, § 1; nor shall any State deprive any

- 15 -

person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws; moreover, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *First Amendment*.

In *Roncales v. County of Henrico*, Civil Action No. 3:19cv234 (E.D.Va. March 3, 2021), the same Trial Court had ruled that to bring a *First Amendment* retaliation claim under 42 U.S.C. § 1983, it must be established that: "'(1) the plaintiff engaged in constitutionally protected *First Amendment* activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." (citing *Booker v. S.C. Dep't of Corr* , 855 F.3d 533 (4th Cir. 2017), 855 F.3d at 537 ; *Suarez Corp. Indus. v. McGraw* , 202 F.3d 676 (4th Cir. 2000) (accord). And, in prayer for reversal, having established that "the plaintiff engaged in constitutionally protected. . . activity," and that the Court "took an action that adversely affected that protected activity", Appellant need only further establish that "there was a causal relationship between the plaintiff's protected activity and the. . . [Court's] conduct." *Id.*

5. **Issue 2: The Trial Court did, in abuse of discretion, fail to grant leave of court to exceed time on filing of a notice of appeal, where the only criteria are that: "(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause." Fed.R.App.Pro. 4(a)(5)(a).**

    i.    **Supporting Facts.**

Under the controlling rule, except as otherwise provided, "the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order

appealed from", Fed.R.App.Pro. 4(a)(1)(A), and the final order dismissing the case, upon a
denial of an Application to Proceed *in Forma Pauperis*, pursuant to 28 U.S.C. § 1915(a), albeit
without prejudice, was dated February 8, 2023.

On March 20, 2023, within 30 days after the time prescribed under Fed.R.App.Pro. 4(a),
Appellant had filed a Motion to Exceed Time, appending a proposed Notice of Appeal, which
motion was duly denied by Order of the Trial Court, dated March 21, 2023.

### ii.    Argument.

#### (1)    Good Trouble?

Appellant had complied with the requirement to "move[] no later than 30 days after the time
prescribed by this Rule 4(a) expires", Fed.R.App.Pro. 4(a)(5)(a)(i), and had, shown "excusable
neglect or good cause", subject to the discretion of the Trial Court, a tribunal that had, on
previous occasions, in a matter involving the same litigant, held that a provision of the *Civil
Rights Act of 1964*, that had been recognized by the nation's highest court in *Georgia v. Rachel*,
384 U.S. 780 (1966), a case involving persons arrested for trespass during the integration of
lunch counters in Atlanta, did not exist. *Webb v. Commonwealth*, Civil Action No. 1-18-00-1251
(E.D.Va. 2018) (originally designated as Case Number 1:18-cr-363 (E.D.Va. 2019)), *aff'd*
Record No. 19-6403 (4th Cir. 2019). *See also Commonwealth. v. Webb*, Case No. GC17004518-
00 (Alexandria G.C. 2018), *aff'd* Case Number CM18000020 (Alexandria Cir. 2018), *aff'd*
Record No. 1780-18-4 (Va. App. 2018).

In contravention to the express rule that "[t]he filing of a notice of removal of a criminal
prosecution shall not prevent the State court in which such prosecution is pending from
proceeding further, except that a judgment of conviction shall not be entered unless the

- 17 -

prosecution is first remanded", 28 U.S.C. § 1455(b)(3); *but see also* 28 U.S.C. § 1443[9], a filing
of the same on October 23, 2018, the Alexandria Circuit Court did convict Appellant, *in
absentia*, on December 16, 2018, while the order denying removal was not published until
January 15, 2019, and, of note, despite his public objections regarding no mention in the Bible
specifically addressing abortion, Alfred Street Baptist Church, "I'm with Her Rev. Dr. Howard-
John Wesley," *YouTube*, July 4, 2022, in this case, involving religious persons arrested for
trespass, in violation of Va. Code § 18.2-119, *see generally* Sofia Resnick, "Why a Trespassing
Trial This March Has Caught the Attention of Activists on Both Sides of the Abortion
Movement (Updated)," *Rewire*, March 1, 2018, Rev. Wesley, and even the Alexandria NAACP
and NOVA Urban League, had elected a right to remain silent, as did alleged conservative
groups, like the Alexandria GOP. *See also* Michael Pope, "Fauci Flip Flop," *Alexandria
Connection*, June 2, 2022[10]. *But see Webb v. Davenport*, Case No. CL22W-3079 (Chesterfield
Cir. 2023), *on appeal* Record No. TBD (Va. 2023); *Webb v. Porter*, Case No. CL21001829
(Alexandria Cir. 2021), *aff'd* Record No. 220089 (Va. May 26, 2022), *cert. denied* Record No.
21-8142 (U.S. 2022); *Webb v. Northam*, Civil Action No. 3:22-cv-00222-DJN, *aff'd* Record No.
22-1627 (4th Cir. 2022), *cert. denied* Record No. 21-8142 (U.S. 2022); *Webb v. E.D.Va.*, Record

---

[9] "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the
defendant to the district court of the United States for the district and division embracing the place wherein it is
pending: (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law
providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act
on the ground that it would be inconsistent with such law." *Id.*

[10] Republican congressional candidate Karina Lipsman is trying to walk back her comment that President Biden's
chief medical advisor Anthony Fauci 'should be jailed' a position she took during a time when she was battling four
competitors to get the nomination to run in the Eighth Congressional District. Now that she has secured the
nomination in a GOP convention, she is flip flopping on Fauci. In a written statement, she says she no longer stands
by the extreme rhetoric that Fauci should be incarcerated even though he has never been charged with a crime." *Id.*

- 18 -

No. 22-5089 (U.S. 2022); *Webb v. E.D.Va.*, Record No. 22-7806 (U.S. 2022); *Webb v. Porter*,

Case No. CL22002367 (Alexandria Cir. 2022).

Of notorious record, in his first bid for U.S. Congress, contemporaneous accounts had

reported:

> The loudest voice of opposition so far has been Mike Webb, a Republican and a
> retired army officer. Webb has attacked Beyer on everything from climate change to
> Beyer's handling of minority groups within his district. Webb's campaign has
> started as grassroots as they come in the 21st century, with a Facebook page, and
> then local farmer's markets and churches when that started gaining a following.
> Vernon Miles, "Arlington: Beyer Reviews His Work in Congress," *Alexandria
> Connection*, January 26, 2016.

In his first race for Arlington Public School Board, for the "ever-interesting Mike Webb",

Scott Broadbeck, "Podcast: Candidate Charles Hernick," *ARLnow*, October 14, 2016,

contemporaneous accounts had reported about the "not a serious option", Scott McCaffery, "Sun

Gazette endorsement: Mary Kadera for Arlington School Board." *Arlington Sun Gazette/Inside

NOVA*, September 23, 2021, "fringe independent", Scott McCaffery, "Candidate: Having

students use public-transit would be a win-win," *Arlington Sun Gazette/Inside NOVA*, September

12, 2021, "who has floated around the periphery of the Northern Virginia political scene for

nearly the past decade", Scott McCaffery, "Two candidates end up on Arlington School Board

ballot," *Arlington Sun Gazette/Inside NOVA*, June 9, 2021, one account stated:

> The only two conservative speakers — Webb and Sailor — are black. So is Adam
> Roosevelt, who, though he did not attend, is the only Republican candidate in any of
> Alexandria and Arlington's House of Delegate districts. Only two black Democrats
> spoke at the forum, one of whom stood in for Del. Alfonso Lopez (D-49), who is
> not black. The other Democratic speakers were white men, albeit who specifically
> addressed racial equity: Bryan Porter, the Commonwealth's Attorney for
> Alexandria, and Attorney General Mark Herring both said they're proud of minority
> hiring in their offices.

- 19 -

Webb supports charter schools and said that Arlington's worst performing high school is also its most diverse. Dan Brendel, "God Shed His Grace on Thee in Alexandria," *Alexandria Connection*, October 20, 2017[11].

### (2) Retaliatory Motive

As noted in the denied motion, under a demand notice, Appellant, now homeless, had been assessed a payment for "Attorney Fees" in the amount of $300.00, court costs, totalling $64.000, and a claim of a late charge, in the amount of $50.58, assigned to the non-rent charges about which Appellant had received no prior notice, but deemed late for failing to pay that about which he was never informed, and, of public record.

As noted in the denied motion, it is the partisan boast, on a Virginia progressive blog, that "[n]ow and again, analysts will refer to the determined and wildly successful Arlington Democrats in battle-hardened military terms", that "[o]nslaught, commando, and scorched earth come to mind", and that "[t]hose are usually employed in relation to the fall campaign when yet another Republican, an "independent" who is really a Republican, or a real independent (often a pesky candidate who finds a way onto the ballot almost every year) is about to be drubbed in an election in the small but intensely political county just across the Potomac from the nation's capital." Cragg Hines, "Arlington Dems Pour It On, Boost "Regular" Dem Mary Kadera to Big Victory in School Board Caucus Over "Insurgent Candidate," *Blue Virginia*, May 26, 2021.

For purposes of relation, the federal judiciary, *Reid v. MSPB*, 508 F.3d 674 (Fed. Cir. 2007), articulates a timing/knowledge test to determine whether conduct is retaliatory, and the

---

[11] "Seven of the 11 speakers were Democrats, plus another "progressive independent." The reason is partly that the lower end of the ticket includes no Republicans or otherwise right-leaning candidates, except Mike Webb for the Arlington County School Board. Webb, though running as an independent, ran for office previously as a Republican. Though invited, none of the five Republican or Libertarian candidates for offices pertaining to Alexandria and Arlington attended; only Gillespie sent a representative." *Id.*

- 20 -

complainant need only demonstrate that "the deciding official knew of the [protected activity]. . . and that the adverse action was initiated within a reasonable time of [the same]". Under the timing/knowledge test, a complainant "need not demonstrate the existence of a retaliatory motive. . . to establish that [the protected activity]. . . was a contributing factor", *Kewley v. HHS*, 153 F.3d 1357 (Fed. Cir. 1998) (quoting *Marano v. DoJ*, 2 F.3d 1137(Fed. Cir. 1993)) Moreover, "[o]nce the knowledge/timing test has been met, an administrative judge must find that the appellant has shown that. . . [the protected activity] was a contributing factor. . . , even if, after a complete analysis of all of the evidence, a reasonable factfinder could not conclude that the appellant's [protected activity]. . . was a contributing factor". *Schnell v. Department of the Army*, 114 M.S.P.R. 83 (2010).

Some courts have suggest that they could not "endorse the proposition that a lawsuit, as such, is an evil", because "[o]ver the course of centuries, our society has settled upon civil litigation as a means for redressing grievances, resolving disputes, and vindicating rights when other means fail." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985). Arguably, Appellant was engaged, especially as a candidate, where "the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office", *Monitor Patriot Co.*, 401 U.S., at 265, in a protected activity.

Still, under the *FACE Act*, "[a]ny person aggrieved by reason of the conduct prohibited by subsection (a) may commence a civil action for the relief set forth in subparagraph (B), except that such an action may be brought under subsection (a)(1) only by a person involved in providing or seeking to provide, or obtaining or seeking to obtain, services in a facility that provides reproductive health services, and such an action may be brought under subsection (a)(2) only by a person lawfully exercising or seeking to exercise the *First Amendment* right of

religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship." 18 U.S.C. § 248(c)(1)(A).

Yet, by its Orders, the Trial Court has denied, in disparate treatment *vis á vis* himself, an Application to Proceed *in Forma Pauperis*, and, in contravention to codified priorities, *see* 28 U.S.C. § 1657, demanded that a *pro se* litigant commence his action all over again, while, of record, "[b]etween the passage of *FACE* in 1994 and 2005, the Department of Justice (DOJ) obtained the convictions of 71 individuals in 46 criminal prosecutions for violations of *FACE*", and "DOJ brought 17 civil lawsuits under *FACE*, which have resulted in injunctive relief, damages, and/or penalties", Staff, "National Abortion Federation: *Freedom of Access to Clinic Entrances (FACE) Act*," *ProChoice*,

http://prochoice.org/pubs_research/publications/downloads/about_abortion/face_act.pdf

(accessed June 17, 2022) (citing National Task Force on Violence Against Health Care Providers, Department of Justice, *Report on Federal Efforts to Prevent and Prosecute Clinic Violence 1998-2000*), but no actions to date have been commenced by DoJ in defense of places of worship, even with the Virginia Governor's concession that he had exceeded his authority in blocking access to places of worship. Charlie Spiering, "Gov. Ralph Northam Tightens Coronavirus Restrictions: You Don't Have to Sit In Church for God to Hear Your Prayers," *Breitbart News*, December 4, 2021.

### (3) Abuse of Discretion

"Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Tynes v. Commonwealth*, 49 Va.App. 17 (2006) (citation and internal quotation marks omitted). "However, to the extent the trial court makes an error of law in the admission of evidence, 'an abuse of discretion occurs.'" *Abney v. Commonwealth*, 51 Va.App. 337 (2008)

- 22 -

(quoting *Bass v. Commonwealth*, 31 Va.App. 373 (2000)). "Furthermore, such evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" *Id.* (quoting *Michels v. Commonwealth*, 47 Va.App. 461 (2006)). And, while there is no direct evidence to support the inference that the Trial Court had failed to admit into evidence Exhibits A to L, appended to the Motion for Leave to Exceed Time, detailing what had been an unlawful eviction process, enforced by almost two dozen officers from the Arlington County Sheriff's Department, under the direction of Sheriff Jose Quiroz, who had been "a 21-year veteran of the Arlington County Sheriff's Office who would be the county's first Latino sheriff" with "the endorsement of retiring sheriff Beth Arthur", Scott Broadbeck, "Two announce candidacy in upcoming races as Ingrid Morroy announces retirement," *ARLnow*, December 8, 2022; *see also* Press Release, "Sheriff Beth Arthur Announces a New Chief Deputy," *Arlington*, August 23, 2022, and who "has served as Sheriff since January 7, 2023, following the early retirement of former Sheriff Beth Arthur", Staff, "About Jose," *Jose for Sheriff*, https://joseforsheriff.us/about-jose (accessed April 12, 2023), and who is now seeking election as a Democrat. *Id. But see* Scott Broadbeck, "BREAKING: Another death reported at Arlington County jail," *ARLnow*, February 1, 2022[12].

As in evidence at Exhibit **A**, the County has claimed to possess no records regarding what this action enforcing the unlawful eviction had cost the taxpayers, but photographs of the armada of patrol cars dispatched to Appellant's residence were included as exhibits to the motion, regarding what would be arguably a *prima facie* canderse of malicious prosecution, *Mayberry v.*

---

[12] "Of the now seven people who have died in the jail over the past seven years, six — including Thompson — were Black.

"This is unacceptable, unconscionable, and distressing," the Arlington branch of the NAACP said in October, following the death of a 58-year-old inmate. The organization issued another statement Wednesday night, calling for a federal investigation." *Id.*

- 23 -

*Ememessay, Inc.*, 201 F.Supp.2d 687 (2002)[13]; *Foretich v. Sullivan*, Case No. 97232, 1991 WL 835087 (Fairfax Cir. July 25, 1991)[14], which, would present evidence to support a conspiracy to violate rights under color of law, as expressly prohibited under 18 U.S.C. § 242, while, as a practical matter, prosecuted also under the *Mississippi Burning Law*, as 18 U.S.C. § 241 has been described in the DoJ practice manual. see Staff, "Deprivation of Rights Under Color of Law Summary," DoJ, https://www.justice.gov/crt/deprivation-rights-under-color-law (accessed June 20, 2022).

The Court may take judicial notice that, under Fed.R.Crim.Pro. 6(a), "[w]hen the public interest so requires, the court must order that one or more grand juries be summoned", but both those with conservative Christian values, *see* Ari Blaff, "FBI Used Undercover Agent to Cultivate Sources among Catholic Clergy and Leadership, House Republicans Reveal," *National Review*, April 10, 2023, and those who are prolife, have not been favored in the current political climate. Press Release, "Nine Defendants Indicted on Federal Civil Rights Conspiracy and *Freedom of Access to Clinic Entrances Act (FACE Act)* Offenses for Obstructing Patients and Providers of a Reproductive Health Services Facility," *DoJ*, March 30, 2022.

Still, the nation's highest court has stated in the past that "[t]here is no cause for consternation when a person who believes in good faith and on the basis of accurate information regarding his legal rights that he has suffered a legally cognizable injury turns to the courts for a

---

[13] "In order to be liable on a claim for malicious prosecution, 'process must be issued for the purpose of bringing the accused before a court, an indictment must be returned, or the person must be arrested.'" *Id.* (quoting *Almy v. Grisham, et al.*, 55 Va.Cir. 401 (2001)).

[14] "Virginia courts have allowed recovery only when the requirements limiting such actions have been strictly observed. In *Ayyildiz v. Kidd*, 220 Va. 1080 (1980), the Supreme Court of Virginia, applying the 'English Rule', reiterated the requirement that 'in malicious prosecutions stemming from civil proceedings the plaintiff must allege and prove arrest of his person, seizure of his property or special injury incurred.'" *Id.*

- 24 -

remedy: 'we cannot accept the notion that it is always better for a person to suffer a wrong silently than to redress it by legal action.'" *Zauderer*, 471 U.S., at 626 (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)). "That our citizens have access to their civil courts is not an evil to be regretted; rather, it is an attribute of our system of justice in which we ought to take pride", and "[t]he State is not entitled to interfere with that access by denying its citizens accurate information about their legal rights." *Id.*

And, intriguingly, despite having solicited more than the required number of signatures to qualify for the ballot in November against Arlington Democrat Alphonso Lopez, the Virginia Democratic Caucus House Majority Whip, representing Virginia's 3rd House District, there has been no mention even of Appellant's candidacy in the press, and the Board of Elections has refused to acknowledge his qualification since January.

### (4) Judgment *Non Obstante Veredicto*

"The United States Court of Appeals for the Fourth Circuit has held that a new trial will be granted if the court finds that '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Fairshter v. American Nat. Red Cross*, 322 F. Supp. 2d 646 (E.D. Va. 2004) (quoting *Atlas Food Sys. & Services, Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587 (4th Cir. 1996)), and, just as "[w]e review the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party", *DeStefano v. Emergency Hous. Grp.*, Inc., 247 F.3d 397 (2d Cir. 2001) (citing *Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir.1999), *cert. denied*, 529 U.S. 1098 (2000), "[w]e review the district court's factual findings for clear error, and its

legal conclusions *de novo*." *U.S. v. Baker*, 598 F. App'x 165 (4th Cir. 2015) (citing *U.S. v. McGee*, 736 F.3d 263 (4th Cir.2013)).

Interpreting the mandate under Fed.R.Civ.Pro. 52(a), "which provides that '[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness", the nation's highest court had held that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564 (1985) (quoting *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364 (1948). And this Circuit has acknowledged that, in at least some instances, where there is a finding of clear error, it would represent a "manifest injustice". *Sonina Properties, L.L.C. v. Muna Investments, L.L.C.*, No. 195685, 2002 WL 1941136, at *1–3 (Va. Cir. Ct. June 26, 2002) (citing *Equal Employment Opportunity Comm'n v. Int'l Longshoremen's Ass'n*, 623 F.2d 1054 (4th Cir.1980); *U.S. v. Aramony*, 166 F.3d 655 (4th Cir.1999)).

Yet, reviewing a Motion to Exceed Time, under Fed.R.App.Pro. 4(a)(5)(A)(i), where the Movant need only thereafter present a showing of good cause or excusable neglect therefor, the Trial Court, in clear error, found *de mininimis*, and or irrelevant, as one may not speculate from a record where the trier of fact published no findings, an eviction proceeding commenced immediately after a candidate for local office had filed a Statement of Organization with election officials, in a jurisdiction in which it is acknowledged by the press that, as noted in the Motion, "[i]n Arlington, Democrats hold almost all levers of power", and "voters there are so solidly blue that they are among the Northern Virginians who usually provide the margin of victory for Democrats who win statewide." Patricia Sullivan, "Arlington County Democrats continue to dominate region's politics," *Washington Post*, November 7, 2017.

- 26 -

Acknowledging that "[a]n act is considered 'judicial' when it is a function normally performed by a judge and the parties dealt with the judge in his or her judicial capacity", *Cobb v. JPMorgan Chase Bank, N.A.*, No. 13-CV-01955-JSW, 2013 WL 6201414, at *1–16 (N.D. Cal. Nov. 27, 2013) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)), and that "[a]llegations of conspiracy do not defeat such immunity", *Id.* (citing *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (*en banc*), "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireless v. Waco*, 502 U.S. 9, 11 (1991). And, "[j]udicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Id.* (quoting *Ashelman*, 793 F.2d, at 1072 (quoting *Cleavinger v. Saxner*, 474 U.S. 193 (1985)). Moreover, "[a] judge lacks immunity only when he or she acts 'in the clear absence of all jurisdiction ... or performs an act that is not 'judicial' in nature.'" *Id.* (quoting *Ashelman*, 793 F.2d at 1072 (internal quotations and citation omitted)).

Nonetheless, "[o]nce a conspiracy has been clearly established, slight evidence may be sufficient to connect a defendant with the conspiracy", *U.S. v. Campanale*, 518 F.2d 352 (9th Cir. 1975), and, in one instance, where the reviewing court found that "[t]he alleged conspiracy could not have been carried out by one person because it required access to the clerk's office, a careful removal of the stolen ballots so that their theft could not be detected, and the forgery of approximately 44 different signatures on 254 ballots, deposited in the ballot boxes of 11 precincts", that court held, where "only one of the named defendants was a member of it, it is sufficient to support a conviction if it is shown by substantial evidence that the parties unknown at the time the indictment was returned committed overt acts therein alleged." *Prichard v. U.S.*, 181 F.2d 326 (6th Cir.), *aff'd sub nom. Prichard v. U.S. of Am.*, 339 U.S. 974 (1950).

Similarly, "[u]nder Virginia law, the elements of a common law civil conspiracy are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff" through an overt action done pursuant to the agreement", *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619 (W.D. Va. 2015) (citing *William v. AES Corp.*, 28 F.Supp.3d 553 (E.D.Va.2014); *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F.Supp.2d 610 (E.D.Va.2009)), and "[t]here must also be an underlying tort committed." *Id.* (citing *William*, 28 F.Supp.3d at 553). And, within the court record, the Trial Court that consumed eleven (11) days to deny an Application to Proceed *in Forma Pauperis*, required only one day to summarily dismiss documentary evidence of an armada dispatched to escort a locksmith and enforce was presented as a routine eviction, against a candidate for local office, which would have required at least two persons just to coordinate conduct during which, in violation of 18 U.S.C. § 241, "two or more persons [had gone]. . . on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured."

Moreover, under 18 U.S.C. § 241, "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same. . . they shall be fined not more than five thousand dollars and imprisoned not more than ten years, and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the *Constitution* or laws of the United States", just as, under Section 1 of the *Fifteenth Amendment*, "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude." No person would deny that the loss of one Democrat Party candidate,

- 28 -

*see generally* American Experience, "What If?" *PBS*,

https://www.pbs.org/wgbh/americanexperience/features/rfk-what-if/ (accessed April 13, 2023)[15],

and, while not invoked by any court, under Fed.R.Crim.Pro. 6(a), "[w]hen the public interest so

requires, the court must order that one or more grand juries be summoned."

Still, "[i]f the district court's account of the evidence is plausible in light of the record

viewed in its entirety, the court of appeals may not reverse it even though convinced that had it

been sitting as the trier of fact, it would have weighed the evidence differently." *City of

Bessemer*, 470 U.S., at 564. And, mindful that the nation's highest court has held that "where a

police officer observes unusual conduct which leads him reasonably to conclude in light of his

experience that criminal activity may be afoot and that the persons with whom he is dealing may

be armed and presently dangerous, where, in the course of investigating this behavior, he

identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial

stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is

entitled for the protection of himself and others in the area to conduct a carefully limited search

of the outer clothing of such persons in an attempt to discover weapons which might be used to

assault him", *Terry v. Ohio*, 392 U.S. 1 (1968), as to Respondents "[t]he record is silent as to

why those parties have not joined", *Catholic League for Religious & Civil Rights v. City & Cty.

of San Francisco*, 624 F.3d 1043 (9th Cir. 2010), while the Trial Court was equally reticent,

electing a right to remain silent in expounding upon its findings in the snap judgment to deny

---

[15] "It's one of the tantalizing questions in American history: what if Robert Kennedy had not been assassinated? Would he have secured the Democratic nomination? Would he have been elected president? If so, how might history have unfolded differently?" *Id.*

leave to Appellant to exceed time in filing a notice of appeal on an Application to Proceed *in Forma Pauperis*.

Under the *Fourteenth Amendment*, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside", and "[n]o State shall make or enforce any law *which shall abridge the privileges or immunities of citizens of the United States*". "[N]or shall any State *deprive any person of life, liberty, or property*, without due process of law; nor deny to any person within its jurisdiction the *equal protection of the laws*." *Id.* And, upon facts establishing what amounts to a *prima facie* allegation regarding a claim under the *Takings Clause*, the Reviewing Court may take judicial notice that, pursuant to 52 U.S. Code § 10305, "[w]henever. . .(1) a court has authorized the appointment of observers under section 10302(a) of this title for a political subdivision; or (2) the Attorney General certifies with respect to any political subdivision named in, or included within the scope of, determinations made under section 10303(b) of this title, unless a declaratory judgment has been rendered under section 10303(a) of this title, that. . . (A) the Attorney General has received written meritorious complaints from residents, elected officials, or civic participation organizations that efforts to deny or abridge the right to vote under the color of law on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title are likely to occur; or (B) in the Attorney General's judgment (considering, among other factors, whether the ratio of nonwhite persons to white persons registered to vote within such subdivision appears to the Attorney General to be reasonably attributable to violations of the *14th* or *15th [A]mendment* or whether substantial evidence exists that *bona fid*e efforts are being made within such subdivision to comply with the *14th* or *15th [A]mendment*), the assignment of observers is otherwise necessary to enforce the guarantees of the *14th* or *15th*

*[A]mendment*; the Director of the Office of Personnel Management shall assign as many observers for such subdivision as the Director may deem appropriate."

### (5) *De Minimis* Injury

To the extent that a public record has been created, it is of note that the nation's highest court has observed that "[t]he constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not", *New York Times v. Sullivan*, 376 U.S. 254 (1964), and Appellant is arguably a public figure, falling within the exception, while the highest court in the Commonwealth has acknowledged "the time-honored maxim that a man's home is his castle," while considering the question as to whether "we give to one sect a privilege that we could not give to all, merely in the hope that most of them will not resort to it", and observing that even a seular claim of "'[r]eligious freedom in the long run does not come from this kind of license to each sect to fix its own limits, but comes of hard-headed fixing of those limits by neutral authority with an eye to the widest freedom to proselyte compatible with the freedom of those subjects to proselying pressures.'" *Hall v. Commonwealth*, 188 Va. 72 (1948) (citing *Marsh v. Alabama*, 326 U.S. 501 (1946); *Tucker v. Texas*, 326 U.S. 517 (1946). And, Appellant is now, of record, homeless.

This Circuit has acknowledged that, while "[l]eft untreated, gender dysphoria can cause, among other things, depression, substance use, self-mutilation, other self-harm, and suicide", on the basis that "the policy constitutes sex-based discrimination or because transgender persons are a quasi-suspect class," had applied "heightened scrutiny to hold that the Board's policy is not substantially related to its important interest in protecting students' privacy. *Grimm v. Gloucester*

*Cy. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020). Yet, when the grandson of a franchise martyr, the godson of a former House Majority Whip in the U.S. Congress, who had shared a spiritual mentor in Dr. Benjamin Elijah Mays, is made suddenly homeless, denied an Application to Proceed *in Forma Pauperis* in an action brought under the *FACE Act's* provisions regarding protection of access to the entrances of places of worship, in a court where at the entrance a stature proclaims that "Justice Delayed is Justice Denied," the words of an oft-quoted Negro preacher and aspirational leader are forgotten, *i.e.*, that the word "wait" still "rings in the ear of every Negro with piercing familiarity", and "[t]his 'Wait' has almost always meant 'Never.'" Martin Luther King, Jr., *Letter from a Birmingham Jail*, April 16, 1963.

The nation's highest court has said that "'[i]t is emphatically the province and duty of the judicial department to say what the law is'", *Nixon*, 418 U.S., at 683 (quoting *Marbury*, 1 Cranch, at 137), and "we've come here today to dramatize a shameful condition." Martin Luther King, Jr., *I Have a Dream*, August 28, 1963.

"All we say to America is, 'Be true to what you said on paper.'" Martin Luther King, Jr., *I've Been to the Mountaintop*, April 3, 1968.

## CERTIFICATION

With this notice, Petitioner also provides, again, a change of address notice, for all future

correspondence to be directed to P.O. Box 40391, Arlington, Virginia 22204.

I declare under penalty of perjury that the foregoing is true and correct.

Name of Party (Print or Type): Major Mike Webb
Address: 955 S. Columbus Street, Unit# 426, Arlington, Virginia 22204
Email Address: GiveFaithATry@gmail.com

Signature: _____     Executed on: ___4-18-25___
                                              (Date)

Subscribed, acknowledged and sworn to before me, the undersigned Notary Public in the County

of __Arlington__ in the Commonwealth of Virginia, this __13__

day of __April__, 20__23__.

NOTARY PUBLIC

My commission expires: __12/31/24__          Registration Number: __7864007__

...rson Vallejos
Commonwealth of Virginia
Notary Public
Commission No. 7864007
My Commission Expires 12/31/24

- 33 -

**EXHIBITS**

**Exhibit A**



**ARLINGTON**
VIRGINIA

RE: County Records Request of March 15, 2023, Reference # C002035-031523

Dear Major Webb,

Arlington County received a public records request from you on March 15, 2023. Your request mentioned:

> **On March 14, 2023, a total of four patrol cars transporting almost two dozen county sheriff's department officers were dispatched to the Infinity Apartments, at 955 S Columbus Street, to escort a locksmith to change a lock on the door of Apartment 426, and, preparing for litigation, arising from an unlawful**

arising from an unlawful eviction, in violation of rights guaranteed under the 14th Amendment, including an established pattern of racketeering activity, as well as a malicious prosecution, I am requesting, to the extent possible, an itemized account of the cost for this conspiracy to violate civil rights under color of law, as well as a copy of the order transmitted to the Department to authorize this unprecedented task force onslaught in a scorched earth raid against a candidate for State Delegate, for the purposes of determining whether the officers were simply performing what they might believe to have been a routine eviction or were following an unlawful order, as defined in U.S. v. Calley.

One might reasonably inquire exactly how many officers are required to change a lightbulb, but that is beyond this request.

request.

Arlington County has reviewed its files and has determined there are no responsive record(s) to your request.

You may want to contact the Arlington County Sheriff's Office at jgelab@arlingtonva.us to request responsive records.

For questions or additional information, please reply to this email.

Sincerely,

Rachel Healy, FOIA Officer
Arlington County - Office of the County Attorney
2100 Clarendon Blvd., Suite 403
Arlington, VA  22201
(C) 703.843.0687 (T) 703.228.310

---

**To monitor the progress or update this request please log into the FOIA Center**



## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April 2023, I will that I will mail this Informal Brief, by

hand delivery and/or email to the following parties, named in suit.

Rev. Howard John Wesley
Senior Pastor
Alfred Street Baptist Church
301 South Alfred Street
Alexandria, Virginia 22314
Telephone: (703) 683-2222
Email: jfwilliams@alfredstreet.org;
rgraham@alfredstreet.org

Rev. Raschaad Hoggard
Associate Minister
Abyssinian Baptist Church
132 Odell Clark Place
New York, New York 10030
Telephone: (212) 862-7474
Email: info@abyssinian.org

Rev. Raphael Warnock
Ebenezer Baptist Church
101 Jackson Street NE
Atlanta, Georgia 30312
Telephone: (404) 688-7300
Email: info@ebenezeratl.org

Jason Miyares, Esq.
Attorney General
Office of the Attorney General
202 N Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Email: mailoag@oag.state.va.us

Rev. Charles W. Smith
Senior Pastor
Shiloh Baptist Church
1500 Ninth Street Northwest
Washington District of Columbia 20001
Telephone: (202) 232-4288
Email: sbc@shilohbaptist.org;
thomasbowen@shilohbaptist.org;
wallacecsmith@gmail.com

Respectfully submitted,

Michael D. Webb, a/k/a Major Mike Webb
P.O. Box 40391 (Homeless)
Arlington, Virginia 22204
Phone: (856) 220-1354
Email: GiveFaithATry@gmail.com
Date: April 13, 2023